### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KURT J. SCHMIDT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 16-1128-JWL** |
| **NANCY A. BERRYHILL,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security

(hereinafter Commissioner) denying Disability Insurance benefits (DIB) and

Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and

1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and

1382c(a)(3)(A) (hereinafter the Act).  Finding no error in the Administrative Law Judge's

(ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

### I.    Background

---

[1]On Jan. 20, 2017, Nancy A. Berryhill, became Acting Commissioner of Social
Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure,
Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the
defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action
is necessary.

Plaintiff applied for DIB and SSI benefits, alleging disability beginning November 8, 2012.  (R. 14, 204, 211).  Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits.  He argues that the ALJ erred in evaluating Plaintiff's mental impairments at step two of the evaluation.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This

assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform his

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

The court finds no error in the Commissioner's final decision.  The ALJ applied

the correct legal standard in making his step two evaluation, and substantial record

evidence supports his evaluation.  Plaintiff does not point to record evidence that any

basic mental work activity has been affected more than minimally by his mental

impairments.  And, he has not shown that the ALJ relied on the opinions of the state

agency psychologists, Dr. Stern and Dr. Maxfield, to find Plaintiff's mental impairments

are not severe, so even if the court found those opinions to be stale, that would not impact

the ALJ's finding that Plaintiff's mental impairments are not severe.  Finally, the

evidence cited by Plaintiff to show limitations resulting from mental impairments does

not compel finding more-than-minimal limitations, and is no more than an invitation to

the court to reweigh the evidence and substitute its judgment for that of the ALJ.

## II.     Discussion

Plaintiff acknowledges that the first question raised here is whether Plaintiff's

mental impairments are severe.  (Pl. Br. 13).  He notes that the ALJ found Plaintiff's

mental impairments are not severe within the meaning of the Act, and argues that the ALJ

must have accorded great weight to the medical opinions of Dr. Stern and Dr. Maxfield in

this regard "due to the similarity between [Dr. Stern's and Dr. Maxfield's] assessment and

the ALJ's step two finding." Id.  He argues that the ALJ's reliance on these opinions was error because the opinions were stale in light of the complete record.  Id.

He argues that the record evidence, including Dr. Schwartz's opinion that Plaintiff had a severe cognitive impairment; Dr. Moore's examination finding pressured speech, tangential thinking, restless motor activity, and verbose streams of thought; and Ms. Husling's finding of circumstantial association, "suggest[s] at least moderate limitations in concentration, persistence, and pace." Id. at 16.  He argues that limitations in social functioning are supported by plaintiff's anger and report of homicidal tendencies, and by Ms. Hernandez's recommendation of inpatient care.  Id.

In response, the Commissioner argues that the step two finding that Plaintiff's mental impairments are not severe is supported by the record evidence.  She points out that the ALJ applied the Commissioner's psychiatric review technique for evaluating mental impairments and concluded that Plaintiff's mental impairments are not severe. (Comm'r Br. 6).  She explains the ALJ's evaluation and argues that the evidence upon which he relied supports his evaluation.  Id. at 6-8.

## A.    The ALJ's Findings

In his step two analysis whether Plaintiff has medically determinable impairments which are severe within the meaning of the Act, the ALJ specifically considered Plaintiff's mental impairments.  (R. 17-20).  He determined that Plaintiff has a bipolar disorder which could potentially cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities but that it is controlled by medication and is

consequently not severe.  Id. at 17.  He found that Plaintiff has other medically

determinable mental impairments including drug abuse, dysthymic disorder, and a

provisional diagnosis of cognitive disorder, but that those impairments do not cause more

than minimal limitations in Plaintiff's ability to perform basic mental work activities and

are therefore not severe.  Id.

The ALJ explained his findings that Plaintiff had only mild limitations in the first

three broad mental functional areas of activities of daily living, social functioning, and

concentration, persistence, or pace, and that Plaintiff has had no episodes of

decompensation, which have been of extended duration.  Id. at 17-18.  In his step two

analysis, the ALJ also provided an extensive discussion of the evidence regarding

Plaintiff's mental impairments.  Id. at 17-20.

## B.      Standard for Evaluating Mental Impairments at Step Two

As Plaintiff's Brief suggests, a mental impairment is not considered severe if it

does not significantly limit plaintiff's ability to perform basic mental work activities such

as understanding, carrying out, and remembering simple instructions; using judgment;

responding appropriately to supervision, coworkers, and usual work situations; and

dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.  The

Tenth Circuit has interpreted the regulations and determined that to establish a "severe"

impairment or combination of impairments at step two of the sequential evaluation

process, plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d

1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have

more than a minimal effect on his ability to perform basic work activities.  Williams, 844

F.2d at 751.  But, he must show more than the mere presence of a condition or ailment.

Hinkle, 132 F.3d at 1352.  If an impairment's medical severity is so slight that it could not

interfere with or have a serious impact on plaintiff's ability to do basic mental work

activities, it could not prevent plaintiff from engaging in substantial work activity and will

not be considered severe.  Hinkle, 132 F.3d at 1352.

The Commissioner has promulgated a Psychiatric Review Technique for

evaluating mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  That technique

provides for rating the degree of functional limitation in each of four broad mental

functional areas:  activities of daily living; social functioning; concentration, persistence,

or pace; and episodes of decompensation.  Id. §§ 404.1520a(c) 416.920a(c).  After rating

the degree of limitation in each functional area, the Commissioner determines the severity

of plaintiff's mental impairments.  Id. §§ 404.1520a(d), 416.920a(d).

When the first three functional areas are rated as "none" or "mild," and the fourth

area is rated as "none," the agency will conclude at step two of the sequential evaluation

process that plaintiff's mental impairments are not severe "unless the evidence otherwise

indicates that there is more than a minimal limitation in [the plaintiff's] ability to do basic

work activities."  Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

**C.    Analysis**

As noted above, the ALJ here applied the Psychiatric Review Technique and found

that Plaintiff has "mild" limitations in the first three broad mental functional areas, and no

episodes of decompensation which have been of extended duration.  Therefore, in

accordance with the regulations, he was required to find Plaintiff's mental impairments

are not severe unless the record evidence otherwise shows there is more than a minimal

limitation in Plaintiff's ability to perform basic work activities.

Consequently, it was necessary and appropriate for the ALJ, as he did, to continue

his step two discussion of the evidence regarding Plaintiff's mental impairments.  He

recognized that Plaintiff's bipolar disorder might cause more than a minimal limitation,

but he also noted Plaintiff's primary care provider, Dr. Moore's diagnosis of bipolar

disorder in full remission (R. 18) (citing Ex. 18F/15 (R. 544)), and he noted treatment

notes in which Plaintiff reported symptom improvement with treatment, and that

psychiatric medications were fairly effective in managing his bipolar disorder.  (R. 19)

(citing Ex. 19F/2, 5 (R. 559, 562), and Ex. 21F/3 (R. 581)).  He concluded that Plaintiff's

bipolar disorder is controlled by medication.  (R. 17).

The ALJ also considered evidence showing Plaintiff lives alone and requires no

assistance; has social activities and close social relationships, reports no difficulty

interacting or cooperating in stores, in treatment, or at work, ability to remember and

attend at appointments; denied concentration problems; and had no difficulties

performing duties when previously employed as a trucker.  (R. 17-18).  The ALJ noted

evidence of reasoning, memory, concentration, and logic revealed in Plaintiff's treatment

notes and examinations.  He noted records showing that Plaintiff was not reacting to

internal stimuli, was appropriately dressed and cooperative, that his stream of thought,

although verbose, was normal, and that Plaintiff had intact memory and attention.  (R. 19).

Plaintiff does not argue that the ALJ's evaluation is incorrect or that he incorrectly applied the standard for evaluating mental impairments at step two of the sequential evaluation process.  Rather, he assumes that the ALJ gave "great weight" to the opinions of the state agency non-examining psychologists because of the similarity between the psychologists' assessments and the ALJ's step two finding.  (Pl. Br. 13) (citing R. 95-96, 110).  The problem with Plaintiff's argument is that other than the fact that the psychologists and the ALJ reached similar conclusions, there is simply no evidence the ALJ relied upon the psychologists' opinions in reaching his step two findings.

To be sure, the ALJ summarized the psychologists' opinions, so there can be no doubt he was aware of and considered those opinions.  But, that discussion appears much later in the decision, toward the end of the ALJ's RFC assessment.  (R. 26).  At no point in his step two analysis did the ALJ even mention the state agency psychologists' opinions.  Rather, he discussed the record evidence relating to each of the broad mental functional areas in order as he discussed those functional areas, and then he discussed the rest of the record evidence relevant to his step two findings.  (R. 17-20).  Based upon that discussion--and that evidence--he concluded that Plaintiff's mental impairments are not severe because they do not have more than a minimal effect on Plaintiff's ability to perform basic mental work activities.  The fact that there are similarities between the ALJ's discussion and the psychologists' rationale for their opinions is not surprising

9

because they were based upon similar evidence and they reached similar conclusions. Plaintiff's premise is not supported by the record evidence or by the decision at issue.

Having failed in its premise, Plaintiff's argument must fail.  Since the ALJ's step two findings did not rely on the state agency psychologists' opinions, it is irrelevant whether those opinions were stale when the ALJ made his decision.  The medical records received into the record after the state agency psychologists provided their opinions are material to the step two determination.  (Pl. Br. 16).  And, those very records were summarized, considered, and discussed by the ALJ in reaching his step two findings.

Plaintiff next argues that the record evidence demonstrates that his mental impairments impose work limitations.  (Pl. Br. 16).  As a preliminary matter, Plaintiff argues the wrong standard.  The question at step two is not whether the mental impairments impose any limitations in Plaintiff's mental ability for work, but whether they impose a more-than-minimal limitation in his ability to perform basic mental work activities (understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers. and usual work situations; and dealing with changes in a routine work setting).  Limitations in other mental abilities, such as the ability to understand, remember, and carry out detailed instructions; the ability to interact appropriately with the general public; or the ability to travel in unfamiliar places or to use public transportation, are important in assessing an appropriate RFC, but they do not constitute a limitation in the ability to perform basic mental work activities as listed in the regulations.  20 C.F.R. §§ 404.1521, 416.921.

The evidence Plaintiff cites regarding work restrictions is erroneous in at least one instance. Plaintiff argues that the record supports "Dr. Schwartz's opinion that [Mr.] Schmidt suffered a severe cognitive impairment in memory." (Pl. Br. 16). But, Dr. Schwartz did not opine that Plaintiff suffers a severe cognitive impairment. Rather, he opined that "it is possible he does have some serious cognitive impairment." (R. 526) (emphases added). The ALJ accepted this provisional diagnosis, and found that it does not show more-than-minimal effect on Plaintiff's ability to perform basic mental work activities. Plaintiff does not point to record evidence which demonstrates otherwise.

And, accepting at face value the evidence Plaintiff cites does not require finding more-than-minimal limitations in the ability to perform basic mental work activities. The most compelling evidence cited is Plaintiff's assertion that Ms. Hernandez recommended inpatient psychiatric care. (Pl. Br. 16) (citing R. 562, 567). This discussion was had in reference to Plaintiff's explanation of his "irritability that brought frequent thoughts of harming others." (R. 567). Ms. Hernandez discussed this incident in detail:

> Client confirms homicidal ideation without intent. Plan would be to hit others with an object. He confirms elevated irritability but reports this has been a common experience and he has self-control. He doesn't want to go to jail. We discussed inpatient services. He declined at this point, stating he would contact this therapist if he felt he couldn't control himself.

(R. 567). Although Ms. Hernandez "discussed inpatient services" with Plaintiff, it is not clear that she recommended inpatient care. Plaintiff declined her offer, and there is no indication she persisted in the request or suggested that inpatient services were required or preferred in these circumstances. Moreover, Ms. Hernandez's use of the terms

"irritability," "harming others," and "homicidal ideation without intent," do not suggest

that Plaintiff was unable to control himself as he stated, or that his condition would have

more-than-minimal effect on his ability to perform basic mental work activities.

While the evidence relied upon by Plaintiff might be viewed to support a

conclusion contrary to that reached by the ALJ in this case, it does not require that

contrary conclusion.  Plaintiff must demonstrate the error in the ALJ's rationale or

finding; the mere fact that there is evidence which might support a contrary finding will

not establish error in the ALJ's determination.  "The possibility of drawing two

inconsistent conclusions from the evidence does not prevent an administrative agency's

findings from being supported by substantial evidence.  We may not displace the

agency's choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo."  Lax, 489

F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed.

Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).

In his final argument, Plaintiff notes that an ALJ is required to consider the

combined effect of all of a claimant's medically determinable impairments, even those

not found severe, when assessing RFC, and he argues that "it is unlikely that the ALJ

considered the impact of [Mr.] Schmidt's mental impairments when assessing RFC."  (Pl.

Br. 17).  The court cannot agree.  Here, the ALJ spent three pages specifically discussing

Plaintiff's medically determinable mental impairments in his step two analysis.  (R. 17-

20).  In his RFC analysis he discussed the medical opinions of the psychologists who

opined with regard to Plaintiff's mental impairments.  (R. 26-27).  The ALJ's credibility

analysis included consideration of facts and evidence relating to Plaintiff's mental

impairments.  (R. 25).  The ALJ stated that he had arrived at his RFC assessment "[a]fter

careful consideration of the entire record" (R. 21) (finding no. 5) (bolding omitted), and

the court's "general practice . . . is to take a lower tribunal at its word when it declares

that it has considered a matter."  Hackett, 395 F.3d at 1172-73 (citing United States v.

Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004); and Andrews v. Deland, 943 F.2d 1162,

1170 (10th Cir. 1991)).  And, Plaintiff does not suggest a mental limitation which is

supported by the record evidence and is not included in the RFC assessed by the ALJ.

Plaintiff has shown no error in the ALJ's evaluation of Plaintiff's mental

impairments.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 3rd day of April 2017, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**